763 So.2d 770 (2000)
Suzanne TURNER, Plaintiff-Appellant,
v.
SUNBELT MANUFACTURING, Defendant-Appellee.
Nos. 32,691-CA, 32,692-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 2000.
*773 Street & Street by C. Daniel Street, Monroe, Counsel for Appellant.
Hayes, Harkey, Smith & Cascio by C. Joseph Roberts, III, Monroe, Counsel for Appellee.
Before NORRIS, WILLIAMS, STEWART, GASKINS and PEATROSS, JJ.
WILLIAMS, Judge.
Suzanne Turner, the claimant in these consolidated workers' compensation cases, appeals a judgment which denied her claim for supplemental earnings benefits (SEB). The workers' compensation judge (WCJ) found that the employer, Sunbelt Manufacturing ("Sunbelt"), was unable to prove that there were jobs available to the claimant because she was incarcerated. For the following reasons, we reverse and remand.

FACTS
In February 1997, the claimant began working as a machine attendant-I at Sunbelt Plastics. Her job required that she pull plastic bags off a conveyor belt, place them in a box, then weigh and place the box on a pallet to be shipped out. The claimant generally worked with boxes weighing approximately 15 pounds, but occasionally handled weights of 30 to 40 pounds.
On May 3, 1997, the claimant was injured when she stepped on a plastic bag and slipped while moving a box from the belt to the table. Although she did not fall, she twisted her left leg. Afterwards her left knee and ankle hurt. Claimant reported the incident to her supervisor, Tony Masters. She was taken to Monroe Medical Center, where she was given medication and referred to an orthopedist, Dr. Doug Brown. However, because Dr. Brown was not a doctor utilized by Sunbelt, the claimant was instructed to see another orthopedist, Dr. Grant Dona.
Following her May 1997 accident, the claimant was paid temporary total disability (TTD) benefits. On July 1, 1997, Dr. Dona released the claimant to return to work without restrictions. On the claimant's first day back, she worked the entire 12-hour shift. During the first few hours, she assisted other workers and performed non-strenuous work. However, when claimant resumed her regular duties, she encountered difficulty in lifting the boxes. The bending, twisting and lifting caused pain in her leg and her back.
At the conclusion of the shift, the supervisor observed that the claimant was limping and asked how she felt. The claimant said she was alright and went home. Once there, she called the "medical manager" handling her file for Crawford and Company, the administrator of Sunbelt's workers' compensation claims. The claimant saw Dr. Dona, who reported that this lumbar strain was a "new" problem.
*774 The claimant did not return to work at Sunbelt. Because of questions pertaining to causation, Sunbelt did not initially reinstate her compensation benefits. In July 1997, the claimant filed a disputed claim with the Office of Workers' Compensation (OWC) seeking temporary total disability benefits or, alternatively, SEB. In September 1997, the employer reinstated her benefits retroactive to July 1, 1997.
Subsequently, the claimant filed a motion to be allowed to see Dr. Brown, the orthopedist to whom she was initially referred. Following a hearing, the motion was granted. The claimant was examined by Dr. Brown in mid-November 1997. He found her to be sincere in her complaints and specifically noted that there was no evidence of malingering. In January 1998, he diagnosed Grade I L-5 spondylolisthesis and degenerative L4-5 facet joints. Dr. Brown recommended work hardening and an eventual functional capacity evaluation (FCE).
Dr. Brown opined that claimant could not return to work before completion of the work hardening program. He further anticipated that she would achieve maximum medical improvement (MMI) by March 1, 1998. The claimant was referred to the Comprehensive Rehabilitation Center for work hardening. Her attitude was deemed reluctant on some tests, and her focus on pain exaggerated. The notes of the individuals who treated claimant at the center described her attitude as poor. The claimant did not have the FCE.
Sunbelt terminated claimant's benefits on February 24, 1998, upon learning that she had been incarcerated for an unspecified offense. The claimant amended her workers' compensation claim to request payment of benefits to her two dependent minor children under LSA-R.S. 23:1201.4. Sunbelt did not initiate those benefits.
In November 1998, a hearing was held to determine the claimant's entitlement to workers' compensation benefits. At the conclusion of the evidence, the WCJ ruled that the claimant was involved in accidents in the course and scope of her employment on May 3, 1997, and again on July 1, 1997. The WCJ considered the issue of the extent of the claimant's injuries. An October 1998 letter from Dr. Brown was admitted into evidence. Dr. Brown opined that the claimant had reached MMI "due to her non-compliance." Given the length of time since Dr. Brown had last examined the claimant, the WCJ accorded little weight to the letter and ordered that the claimant be reevaluated.
The WCJ stated that if Dr. Brown found that the claimant was able to return to work, additional benefits would not be awarded. However, if he found she was not able to return to work, the claimant would be entitled to benefits from that day forward. Due to the claimant's incarceration, the benefits would be forfeited except for $50 per month to each of the claimant's two minor children.
Dr. Brown examined the claimant again in December 1998. His report stated that he found chronic lumbar strain and that no further treatment was necessary. Dr. Brown released claimant to return to work with restrictions of no lifting in excess of 35 pounds and no repetitive bending and twisting.
The hearing resumed in February 1999, and Dr. Brown's report was received into evidence. Although Dr. Brown reported that claimant could work only with restrictions, the WCJ denied the claimant's request for both TTD and SEB, finding that the claimant's incarceration prevented the employer from proving availability of employment under LSA-R.S. 23:1221(3). The WCJ also denied the claimant's request for penalties and attorney fees, finding that the employer had raised several grounds upon which to controvert the claimant's assertions. The claimant appeals the judgment.

DISCUSSION

Entitlement to SEB
The claimant contends the WCJ erred in finding that she was not entitled *775 to an award of SEB. Claimant argues that despite her incarceration, Sunbelt was required to prove that there was a job available within her physical capabilities.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. Freeman, supra; Stobart v. State, 617 So.2d 880 (La.1993); Mart v. Hill, 505 So.2d 1120 (La.1987).
The purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993). An employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. LSA-R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. Workers' compensation is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the claim for SEB or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee, or was available in his or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Banks, supra. Actual job placement is not required. Romero v. Grey Wolf Drilling Company, 594 So.2d 1008 (La.App. 3rd Cir.1992). The amount of SEB is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity. LSA-R.S. 23:1221(3)(a); Banks, supra.
An employer cannot point to a claimant's lack of effort in lieu of the employer's presenting sufficient evidence of job availability within the claimant's physical capabilities. The employer bears the burden of proving job availability and the claimant's post-injury earning capacity. The employer cannot shift this burden to the employee by pointing to his lack of effort in seeking post-injury employment. Banks, supra.
An employer can discharge its burden by establishing (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region, (2) the amount of wages that an employee with claimant's experience and training can expect to earn in that job, and (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. All of this can be proven without the cooperation or participation of the employee. Banks, supra. A "suitable job" means a job that the claimant is not only physically capable of performing, but one that also falls within the limits of the claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education. Banks, supra.
In the present case, according to Sunbelt's own job specifications, the position of machine attendant-I requires the exertion of the following pounds of force: 50 to 100 pounds occasionally, and/or 25 to 50 *776 pounds frequently, and/or 10 to 20 pounds constantly. The job also requires occasional pushing/pulling, twisting, and stooping/bending. These job activities are described as repetitive.
Sunbelt's director of human resources testified that the boxes which the claimant was required to handle varied in weight from 15 to 25 pounds. The claimant's supervisor testified that he thought these boxes weighed about 15 pounds per case. However, he acknowledged that the heaviest ones could weigh as much as 30 to 40 pounds. In addition, after Dr. Brown's most recent examination of the claimant, he imposed work restrictions advising her not to lift objects weighing in excess of 35 pounds and not to perform repetitive bending and twisting movements.
Sunbelt contends that Dr. Brown's findings did not preclude claimant from returning to her previous job. Contrary to this contention, the medical restrictions imposed on claimant's activities meant that she was unable to perform her previous job, which Sunbelt described as requiring repetitive pulling, twisting and bending with periodic lifting of forty-pound boxes.
Thus, the evidence presented established that the claimant could not perform her previous job or earn 90% of her pre-injury wage given her physical limitations. Consequently, in order to avoid paying SEB, Sunbelt was required to prove that a suitable job existed in the reasonable geographic region. However, Sunbelt argued at trial that this statutory requirement is not applicable because the incarcerated claimant would not be able to accept any available position. The WCJ agreed and determined that claimant's incarceration imposed an "impossible task" upon Sunbelt to prove employment availability. We disagree.
As noted in the Banks case, the employer's burden of proving the existence of a suitable job within the claimant's physical capabilities is not contingent upon the claimant's cooperation or participation. Nor is actual job placement required. Thus, the claimant's unavailability does not relieve Sunbelt of its statutory responsibility. Sunbelt failed to produce evidence to establish the existence of a suitable job within claimant's physical capabilities.
Therefore, the WCJ erred in finding that the claimant was not entitled to SEB in the stipulated amount of $188.12 per week based on the average weekly wage of $282.19, and the judgment shall be reversed. However, pursuant to LSA-R.S. 23:1201.4, the claimant's right to compensation benefits is forfeited during her period of incarceration unless she has a dependent who relies upon such compensation for support.
The claimant argues that her compensation benefits should have been paid to her children while she was incarcerated. Sunbelt contends the children should not receive benefits because the evidence does not show that they were dependent upon claimant. LSA-R.S. 23:1201.4 provides in pertinent part:
The employee's right to compensation benefits, including medical expenses, is forfeited during any period of incarceration; unless a workers' compensation judge finds that an employee has dependents who rely on a compensation award for their support, in which case said compensation shall be made payable and transmitted to the legal guardian of the minor dependent or other person designated by the workers' compensation judge and such payments shall be considered as having been made to the employee. [emphasis ours]
The claimant has two children: a twelve-year-old son, Daniel, and an eleven-year-old daughter, Sophia, who has been living at the Louisiana Baptist Children's Home, a privately run facility, since August 1996. Daniel lived with his mother until her incarceration. He then resided with his mother's pastor, who was designated his *777 legal guardian, from March 1998 until November 1998. At that time, he was placed in a state-supported home for boys.
At the November 1998 hearing, testimony was presented concerning the claimant's pre-incarceration financial support of her children. While her daughter resided at the children's home, the claimant gave her items of clothing and an allowance. Claimant estimated that the amount she contributed to Sophia's support was approximately $150 per month. However, a social worker at the home estimated that the amount was $50 per month. As to Daniel, the claimant testified that half of each of her monthly benefits checks, or approximately $400, went toward providing him with food, clothing and entertainment.
After considering the foregoing testimony, the WCJ determined that each child was entitled to receive $50 per month of any compensation benefits subsequently awarded to claimant, implicitly finding that the children were dependents of claimant. Based upon this record, we cannot say the WCJ was clearly wrong in finding that the children were dependents who relied on claimant's compensation for at least part of their support. However, applying the express language of the statute, we conclude that the WCJ erred in determining the amount of benefits to be distributed to the children.
This court has previously considered the method of distributing the compensation benefits of an incarcerated employee to her dependent child. In the case of Jowers v. Liberty Construction Co., 32,068 (La.App.2d Cir.6/16/99), 740 So.2d 735, this court found that a portion of the compensation benefits should be paid to a state agency pursuant to a juvenile court child support order, and that the remainder of the benefits should be paid directly to the minor child.
Adopting the same approach in the present case, we conclude that the full amount of the claimant's monthly compensation during the period of incarceration should be distributed equally to the legal guardian of each minor child pursuant to LSA-R.S. 23:1201.4. We note that there was some uncertainty concerning the actual guardianship of Daniel at the November 1998 hearing. In order to clarify this matter, the WCJ directed that the litigants supply her with more information at the next hearing. However, since the WCJ subsequently determined that the claimant was not entitled to additional benefits, the situation of the children was not pursued.
As a result, the record lacks adequate evidence with which to determine the proper recipient of the claimant's compensation during her term of imprisonment. Consequently, we shall remand this matter to the OWC for the limited purpose of identifying the legal guardians to whom the claimant's compensation benefits shall be equally distributed on behalf of each minor child for the period of incarceration.

Penalties and Attorney Fees
The claimant contends the WCJ erred in refusing to assess penalties and attorney fees against Sunbelt for its failure to pay compensation benefits on behalf of the minor children. Claimant argues that Sunbelt terminated her benefits before properly investigating her claim.
The employer's failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim. LSA-R.S. 23:1201(F). To reasonably controvert a claim, the employer must have factual or medical information to reasonably counter that provided by claimant. Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140. Attorney fees may also be awarded when an employer's discontinuance of benefits is arbitrary, capricious or without probable cause. LSA-R.S. 23:1201.2.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation *778 benefits are penal in nature and must be strictly construed. Davis v. Jones Baldwin Music Co., 27,545 (La.App.2d Cir.11/1/95), 662 So.2d 803. The WCJ's decision concerning whether or not to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Balsamo v. Jones, supra.
In the present case, Sunbelt asserted several grounds for contesting the claimant's continued entitlement to compensation benefits, including the claimant's incarceration, her failure to immediately report the second injury, and Dr. Brown's indication of MMI in March 1998. However, the alleged delay in reporting the July 1997 injury cannot reasonably be a ground for denying benefits since Sunbelt reinstated claimant's benefits after that date. In addition, the evidence shows that Sunbelt terminated benefits before the estimated date of MMI upon claimant's incarceration. Thus, these asserted reasons do not provide reasonable grounds for discontinuing claimant's benefits in February 1998.
Although Sunbelt contends that it refused to comply with the request to pay compensation to claimant's minor children because their custody status was in question, the employer acknowledged that it did not attempt to determine their custodial situation. As a result, Sunbelt lacked sufficient factual information with which to counter the claimant's information concerning the fact that her children were dependents entitled to receive benefits. Thus, the evidence does not support a finding that Sunbelt reasonably controverted the claimant's entitlement to benefits. Consequently, Sunbelt's discontinuance of benefits and refusal to distribute payments to the claimant's children was arbitrary.
Based upon this record, we must conclude that the WCJ abused her discretion in refusing to assess penalties and attorney fees against the employer. Accordingly, we shall assess Sunbelt with a penalty of $2,000.
The claimant is also entitled to an award of attorney fees pursuant to LSA-R.S. 23:1201.2. The award of attorney fees must be reasonable based on the degree of skill involved and the volume of work performed in prosecuting the claim. Henton v. Walker & Wells Contractors, Inc., 25,821 (La.App.2d Cir.5/4/94), 637 So.2d 672, writ denied, 94-1491 (La.9/23/94), 642 So.2d 1295. An additional factor to be considered is the time expended on appeal by claimant's counsel. Henton, supra. After reviewing the record and considering these factors, we conclude that an award of $3,000 in attorney fees for the work before the OWC and $1,000 for the work on appeal is reasonable.

CONCLUSION
For the foregoing reasons, the judgment rejecting the claimant's demand for compensation benefits is reversed, and judgment is rendered finding that the claimant, Suzanne Turner, is entitled to supplemental earnings benefits of $188.12 per week, in accordance with LSA-R.S. 23:1221(3)(a), and ordering that the full amount of compensation benefits for the period from February 24, 1998, through the date of claimant's release from incarceration, shall be paid equally to the claimant's minor children through their legal guardians.
This case is remanded for the limited purpose of identifying each child's legal guardian, to whom the compensation shall be made payable. Additionally, the employer, Sunbelt Manufacturing, is assessed with a penalty of $2,000 and claimant is hereby awarded attorney fees of $3,000 for the work before the OWC and $1,000 for the work on appeal. Costs of this appeal are assessed to the appellee, Sunbelt Manufacturing.
REVERSED AND REMANDED.
GASKINS, J., dissents with reasons.
GASKINS, J., dissenting.
In the determination of whether SEBs are owed, I agree with the majority that, *779 even though the plaintiff is incarcerated, the employer still has the burden of proving job availability within the claimant's physical capabilities. I would, however, remand the case back to the trial court to allow the defendant to supplement evidence on this issue.
La. R.S. 23:1201.4 states that the benefits are forfeited when the claimant is incarcerated, unless a workers compensation judge finds that an employee has dependants who rely on a compensation award for their support. This language indicates that the amount of benefits the defendant must pay to dependants is the amount used for their actual support and no more. If benefits are due to these children, the actual amount needed for their support should be determined by the trial court, with the remainder being retained by the defendant.
Finding that there were several grounds upon which to question the claimant's continued entitlement to benefits, I would find no error in the workers compensation judge's refusal to award penalties and attorney fees.