818 So.2d 217 (2002)
Edward Rene SCOTT
v.
LAKEVIEW REGIONAL MEDICAL CENTER.
No. 2001 CA 0538.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
Rehearing Denied May 22, 2002.
*219 James E. Cazalot, Jr., New Orleans, for Claimant-Appellee Edward Rene Scott.
Patrice W. Oppenheim, Metairie, for Employer-Appellant Lakeview Regional Medical Center.
Before: FOIL and PETTIGREW, JJ., and KLINE,[1] J. Pro Tem.
PETTIGREW, Judge.
This workers' compensation action is before us on appeal from a judgment in favor of claimant, Edward Rene Scott, and against his employer, Lakeview Regional Medical Center ("LRMC"). For the following reasons, we reverse.

FACTS
The parties hereto stipulated that on or about August 24, 1995, Edward Rene Scott ("Mr. Scott") was employed by LRMC when he sustained injury to his lower back while assisting other employees lift a patient in the shower. The parties also stipulated that Mr. Scott's average weekly wage prior to his accident was $300.52, which assuming Mr. Scott was totally disabled, gave rise to a weekly compensation rate of $200.36.
There is no dispute LRMC paid Mr. Scott benefits at the rate of $200.36 per month from the beginning of his disability until January 10, 1999. It was further stipulated that as a result of his workplace accident on August 24, 1995, Mr. Scott subsequently underwent two lumbar surgeries that were performed by his treating neurosurgeon, Dr. John Jackson. Mr. Scott underwent removal of an acutely ruptured disc at the L5-S1 disc level and decompression of the S1 nerve root on February 2, 1996. Shortly over a year later, on February 27, 1997, it was necessary to remove the recurrent ruptured disc at L5-S1 and stabilize the spine with a posterior lumbar interbody fusion. It is also undisputed that Mr. Scott reached maximum medical improvement (MMI) regarding his back condition on or about June 11, 1998.
Since October 14, 1998, until the present time, Mr. Scott has been incarcerated as a result of his conviction for possession with intent to distribute 2.5 grams of cocaine. Accordingly, Mr. Scott's benefits were suspended until he established that he had minor children who were dependent upon his benefits for their support.
Following a trial held on October 12, 2000, the workers' compensation judge concluded that Mr. Scott's two dependent children were entitled to receive his Supplemental Earnings Benefit (SEB) payments at the rate of $200.36 per week (or $801.44 a month) from January 10, 1999, when LRMC terminated his benefits, until Mr. Scott received "proper" vocational *220 rehabilitation. From this judgment, LRMC has taken a suspensive appeal.

ASSIGNMENTS OF ERROR
In connection with its appeal in this matter, LRMC sets forth the following assignments of error for review by this court:
1. The Louisiana Department of Labor, Office of Workers' Compensation [OWC] Judge committed legal and manifest error in finding the Claimant proved he was entitled to Supplemental Earnings Benefits because he was unable to earn ninety percent (90%) of his pre-injury wages.
2. The OWC Judge committed legal and manifest error in finding LRMC had not provided adequate vocational rehabilitation counseling to the Claimant during his incarceration.
3. The OWC Judge committed legal and manifest error in finding the Claimant proved he had minor children who were dependent upon his workers' compensation benefits for their support and were therefore entitled to his benefits during his incarceration.
4. The OWC Judge committed legal and manifest error in finding the Claimant had a heart-related injury, which disabled him from working and entitled him to an award of medical expenses.

STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As an appellate court, we cannot set aside the factual findings of the workers' compensation judge unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.

DISCUSSION

Award of SEBs
The initial error assigned by LRMC is that the workers' compensation judge erred in finding that Mr. Scott proved he was entitled to SEBs because he was unable to earn 90 percent of his preinjury wages. LRMC points out in its brief that the workers' compensation judge awarded Mr. Scott SEBs at his full rate of compensation, $200.36 per week.
In Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra, the Louisiana Supreme Court opined:
The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. An employee is entitled to receive supplemental earnings benefits (SEBs) if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the *221 employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case....
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. Actual job placement is not required. The amount of SEBs is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity.
Banks, 96-1587 at 8-9, 696 So.2d at 556 (quotation marks and citations omitted).
A copy of the medical records of Dr. John Jackson was introduced as Joint Exhibit 3. In an office note dated June 11, 1998, Dr. Jackson noted that Mr. Scott was progressing well and had been walking two miles a day at a local health club. Despite complaints of being disabled due to a narrowing of the anterior heart ventricle, Dr. Jackson opined that Mr. Scott had reached MMI on that date. Dr. Jackson assigned Mr. Scott a 25 percent permanent partial disability of the body as a whole, and restricted him from straining his back or lifting in excess of 25 pounds. In an office note dated September 24, 1998, Dr. Jackson noted that while some slight motion may have been present, Mr. Scott's spine remained fused, and Dr. Jackson discounted the possibility of further medical treatment. Dr. Jackson further noted that in light of Mr. Scott's heart condition, he was restricted from straining his back or performing repeated bending or lifting. Due to Mr. Scott's two prior surgeries, Dr. Jackson assigned a 35 percent permanent partial disability of the body as a whole, and restricted Mr. Scott from lifting in excess of 25 pounds. In a letter to the St. Tammany Parish Prison dated October 29, 1998, Dr. Jackson reiterated his earlier restrictions on Mr. Scott's activities, but reduced Mr. Scott's percentage of disability to 25 percent of the body as a whole.
A copy of the deposition of Dr. Alan R. Perego, a board-certified internist and medical director at Dixon Correctional Institute, was introduced as Joint Exhibit 6. In connection with his deposition testimony, Dr. Perego stated that Mr. Scott had not made a complaint relative to his back since July 1999. He was assigned to regular duty status with a bottom bunk and restrictions of no prolonged walking or lifting of greater than 15 pounds.
Dr. Perego also stated that Mr. Scott had filed a civil suit against the St. Tammany Parish Sheriff in federal court. In connection therewith, Mr. Scott was evaluated by a contract orthopedist, Dr. Brad Edwards, at Louisiana State Penitentiary at Angola, Louisiana, on June 5, 2000. According to Dr. Perego, Dr. Edwards suggested Mr. Scott perform stretching exercises, but "[d]idn't recommend any restrictions whatsoever." When presented with the earlier restrictions placed upon Mr. Scott by Dr. Jackson and in view of the recommendations of Dr. Edwards, Dr. Perego testified that he "certainly would have no problem in having [Mr. Scott] perform duties at that level."
Nevertheless, Mr. Scott testified that he is a "disabled inmate" and suffers from intermittent pain and numbness that he contends render him incapable of holding a 40-hour per week job. Although a court may consider a claimant's uncorroborated testimony of subjective pain, if *222 credible, concerning what his physical limitations might be as a result of pain, the decision of the court should not be based on claimant's self-serving testimony on the ultimate issue of whether the claimant is able to work. Duhon v. Holi Temporary Services, Inc., 97-0604, pp. 6-7 (La.App. 4 Cir. 10/1/97), 700 So.2d 1152, 1155.
Even if this court were to assume arguendo that Mr. Scott met his burden of proving, by a preponderance of the evidence, that he is unable to earn 90 percent of his pre-injury wage, the burden then shifted to LRMC. In order to defeat the claim for SEBs or establish Mr. Scott's earning capacity, LRMC had to prove, by a preponderance of the evidence, that Mr. Scott was physically able to perform a certain job and that the job was offered to Mr. Scott or that the job was available to Mr. Scott in his or LRMC's community or reasonable geographical region. Actual job placement was not required.
The trial transcript reveals that LRMC offered the testimony of Ms. Shelley Brantley, an employee of a private rehabilitation firm, who testified that Mr. Scott's previous work history revealed several marketable skills, which upon his release from prison, could be transferred to a job that would not require lifting of more than 25 pounds. Ms. Brantley testified that, in her opinion, Mr. Scott was well-spoken, very presentable and expressed himself very well. She also noted that Mr. Scott was able to sit for about 1½ hours without any apparent discomfort.
Ms. Brantley performed a labor market survey several weeks before trial wherein she identified actual full-time jobs that Mr. Scott would have been qualified to apply for if he were not incarcerated. Ms. Brantley stated that these jobs were all located within 35 miles of Mr. Scott's residence in Mandeville, Louisiana, and ranged in salary from $232.00 to $501.00 per week. Said jobs would also fit within the restrictions assigned by Mr. Scott's physicians and his transferable skills. On-the-job training was also provided. The specific jobs identified by Ms. Brantley involved primarily clerical duties and included front desk clerk at a hotel, gas station cashier, loan/credit clerk at three different finance companies, general office clerk at a pest control company, and a customer service representative at a car rental agency. Ms. Brantley also reviewed the Louisiana Department of Labor Occupational Employment Wage Survey and determined that similar jobs have historically been available.
Counsel for Mr. Scott moved to strike testimony as to positions historically available arguing that the statute required that Mr. Scott be notified of an actual job within his capabilities, wage requirements, and geographic region.
A similar factual scenario was presented in Turner v. Sunbelt Manufacturing, 32-691, 32-692 (La.App. 2 Cir. 6/14/00), 763 So.2d 770, a case cited and relied upon by Mr. Scott. In Turner, the employer argued that the statutory requirement mandating that an employer establish that a suitable job existed in the reasonable geographic region was not applicable to an incarcerated claimant who would be unable to accept any available position. The workers' compensation judge agreed and determined that claimant's incarceration imposed an "impossible task" upon the employer to prove availability of employment. Turner, 32-691, 32-692 at 6, 763 So.2d at 776. On appeal, the second circuit disagreed and reversed relying on Banks for the proposition that the employer's burden of proving the existence of a suitable job within the claimant's physical capabilities is not contingent upon the claimant's cooperation and participation, and actual job placement was not required. *223 The court held that "the claimant's unavailability does not relieve [his employer] of its statutory responsibility. [Claimant's employer] failed to produce evidence to establish the existence of a suitable job within claimant's physical capabilities." Turner, 32-691, 32-692 at 7, 763 So.2d at 776.
We respectfully decline to apply this approach to the facts of this case. In Banks, the Louisiana Supreme Court attempted to resolve the inconsistent standards of the state courts of appeal with regard to whether an employer has satisfied its burden of proving "job availability" pursuant to La. R.S. 23:1221(3)(c)(i). The supreme court in Banks concluded that:
[A]n employer may discharge its burden of proving job availability by establishing, at a minimum, the following, by competent evidence:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
By "suitable job," we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education.
Banks, 96-1587 at 11-12, 696 So.2d at 557 (footnote omitted).
In the instant case, there was credible testimony in the record to the effect that suitable employment was available to Mr. Scott several weeks prior to trial. Although Mr. Scott did not receive notification prior to trial of the existence of said jobs, there were indications in the record to the effect that Mr. Scott would be incarcerated for at least several more years. In our opinion, to mandate that an employer provide an incarcerated claimant with notification of an actual job suitable to claimant's individual requirements and capabilities would be a vain and useless act.
We conclude that Mr. Scott failed to prove by a preponderance that he was disabled from working and unable to earn 90 percent of his pre-injury wages. It is also the conclusion of this court that LRMC established by a preponderance of the evidence that there were suitable jobs available to Mr. Scott within his restrictions, capabilities, and reasonable geographical region. Thus, an award of SEBs was not warranted.

Vocational Rehabilitation
The second error assigned by LRMC is that the workers' compensation judge was clearly wrong in finding LRMC had not provided adequate vocational rehabilitation counseling to Mr. Scott during his incarceration. In his written reasons for judgment, the workers' compensation judge determined:
Vocational Rehabilitation Councilor [sic] testified for [LRMC]. The court finds the Vocational Rehabilitation was inadequate and cannot be used as a basis for Supplemental Earnings Benefits. No job was ever offered to [Mr. Scott] as acknowledged by the Vocational Consultant.
Subsection A of La. R.S. 23:1226 clearly states that rehabilitation services are warranted when the injury suffered by the employee "precludes the employee from earning wages equal to wages earned prior to the injury[.]" (Emphasis added). Noveh *224 v. Broadway, Inc., 95-2081, pp. 4-5 (La.App. 1 Cir. 5/10/96), 673 So.2d 349, 352, writ denied, 96-1431 (La.9/13/96), 679 So.2d 109.
We have heretofore determined that there were various vocational alternatives available to Mr. Scott that suited his medical restrictions and his marketable skills and abilities. Mr. Scott's incarceration precluded him from applying for such jobs, thus we cannot say definitively that Mr. Scott was unable to earn wages equal to wages earned prior to his injury. Thus, LRMC cannot be condemned to provide vocational rehabilitation services to Mr. Scott in prison until such time as he is released and eligible to apply for employment. The workers' compensation judge erred in determining that Mr. Scott was entitled to vocational rehabilitation.

Dependent Children's Right to Receive Benefits
The third error assigned by LRMC is that the workers' compensation judge erred in determining that Mr. Scott proved he had minor children who were dependent upon his workers' compensation benefits for their support and were therefore entitled to said benefits during Mr. Scott's incarceration. In written reasons for judgment, the workers' compensation judge found that Mr. Scott "had dependents that were dependent upon him. [Mr. Scott's] wife testified that [Mr. Scott's] money was used for the children and household support."
Louisiana Revised Statutes 23:1201.4 provides in pertinent part:
The employee's right to compensation benefits, including medical expenses, is forfeited during any period of incarceration, unless a workers' compensation judge finds that an employee has dependents who rely on a compensation award for their support, in which case said compensation shall be made payable and transmitted to the legal guardian of the minor dependent or other person designated by the workers' compensation judge and such payments shall be considered as having been made to the employee. [Emphasis added]
The record reflects that at the time of trial, Mr. Scott had two minor children: a fifteen-year-old daughter, Latoya Scott, and a five-year-old son, Edward Scott, Jr. Mr. Scott also had a twenty-one-year-old daughter, Latysha Scott, who "stayed there occasionally off and on" with her four-year-old daughter, Torrion Scott. The parties to this matter stipulated that Mr. Scott was incarcerated at the time of trial and had been incarcerated since October 14, 1998.
It was further stipulated by the parties that until January 10, 1999, Mr. Scott's compensation checks were mailed to 2542 America Street, Mandeville, Louisiana, a residence Mr. Scott shared with his wife and children. Accordingly, Mr. Scott's compensation checks continued to be sent to this address even after he became incarcerated on October 14, 1998. At the hearing held on October 12, 2000, Mr. Scott's wife, Cheryl Scott, testified that sometimes her husband would give her his workers' compensation check, but if she had enough money from her paycheck to pay the bills, Mr. Scott would buy food or give money to the kids. Cheryl Scott estimated that following her husband's accident in 1995, she earned $25,000.00 as the director of the Covington Housing Authority, and Mr. Scott received approximately $400.00 in disability benefits every two weeks. Cheryl Scott also stated that if she ran short of money, she and Mr. Scott would use some of his benefits check to pay the household bills. Cheryl Scott was unable to say exactly how much of Mr. Scott's check was used to pay household expenses.
*225 Cheryl Scott admitted that following his accident, Mr. Scott developed a problem with crack cocaine, but claimed that she did not know what income Mr. Scott used to support his cocaine addiction. Cheryl Scott did concede that aside from his workers' compensation benefits, Mr. Scott had no other source of income. After Mr. Scott's benefits were terminated in January of 1999, Cheryl Scott stated that if she was short of money, her mother would help her pay the bills.
In connection with his testimony, Mr. Scott stated that his wife usually paid the bills, but added he would give his wife "the majority" of his benefits check. Mr. Scott admitted that he had previously undergone rehabilitation treatment for a cocaine problem, but claimed that he had not used cocaine since 1990.
Mr. Scott claimed that following his accident at LRMC, he started using cocaine "[m]aybe once or twice a month." While Mr. Scott distinctly recalled telling the officers who arrested him that he was using cocaine, he could not specifically recall whether he told the officer that he had a $600.00-a-day cocaine habit. When confronted with his testimony to this effect from his earlier criminal trial, Mr. Scott exercised his Fifth Amendment rights against self-incrimination on the grounds that his conviction was currently awaiting review on appeal.
Mr. Scott argues in his brief to this court that once minor children have been found to be dependent upon a claimant who is incarcerated, said children are entitled to the full amount of the workers' compensation benefits owed to the claimant. In support of this contention, Mr. Scott cites Jowers v. Liberty Construction Company, 32-068 (La.App. 2 Cir. 6/16/99), 740 So.2d 735 and Turner v. Sunbelt Manufacturing, supra.
In Jowers the second circuit tied an award of compensation benefits to an incarcerated claimant's minor dependents to a determination of dependency by the court. A dependency determination was not made in Jowers; however, it was stipulated by the defendants that the incarcerated claimant's minor child was entitled to receive the full amount of his benefits, and the issue before the court was designation of the proper payee. Jowers, 32-068 at 5, 740 So.2d at 738. A similar result was reached by the third circuit in Mouton v. G & B Building Specialists, 99-117, p. 3 (La.App. 3 Cir. 6/2/99), 741 So.2d 741, 743, which interpreted La. R.S. 23:1201.4 as requiring a finding that the dependents relied upon the claimant's compensation award for their support.
In Turner, the second circuit purportedly adopted the same approach previously utilized by it in Jowers, but in Turner, the court reversed the workers' compensation judge's finding and held that once a dependency determination is made, the full amount of an incarcerated claimant's compensation benefits is owed to his minor dependent. Turner, 32-691, 32-692 at 8, 763 So.2d at 777.
Turning now to the case presently before us, we note that this assignment of error is moot in view of our earlier determination that Mr. Scott failed to prove by a preponderance that he was disabled from working and entitled to receive benefits. Nevertheless, we conclude that the evidence contained in the record is sufficient to support the workers' compensation judge's finding that Mr. Scott's minor children, Latoya Scott and Edward Scott, Jr., were dependents of Mr. Scott and relied upon his compensation checks for their support. Accordingly, Mr. Scott's minor dependents would be entitled to the full amount of his benefit checks had Mr. Scott established his disability.

*226 Evidence Regarding Mr. Scott's "Heart Condition"
The fourth and final error assigned by LRMC is that the workers' compensation judge erred in finding that Mr. Scott had a heart-related injury that disabled him from working and entitled him to an award of medical expenses. In written reasons for judgment, the workers' compensation judge stated that Mr. Scott had "developed a heart condition" from the two lumbar operations performed upon him by Dr. John Jackson.
Based upon this court's review of the record in this matter, we find that the evidence does not support the conclusion that Mr. Scott's heart complaints were the result of his surgeries, but were more properly attributable to other causes. However, once again we note that this assignment of error is moot in view of our earlier determination that Mr. Scott failed to prove by a preponderance that he was disabled from working and entitled to receive benefits.

CONCLUSION
For the above and forgoing reasons, we conclude that the workers' compensation judge was clearly wrong in determining that Mr. Scott was incapable of earning at least 90 percent of his pre-injury wages. Accordingly, it is the conclusion of this court that Mr. Scott is not entitled to benefits, and therefore, his dependent minor children are not entitled to benefits. Further, we find that due to his incarceration, Mr. Scott is not entitled to vocational rehabilitation. All costs associated with this appeal shall be assessed against claimant, Edward Rene Scott.
REVERSED AND RENDERED.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.