809 So.2d 294 (2001)
Scott WILLIAMS
v.
WAL-MART STORES, INC.
No. 2000 CA 1347.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*296 Christopher R. Schwartz, Metairie, for Plaintiff-Appellee Scott Williams.
Frank A. Flynn, Lafayette, for Defendant-Appellant Wal-Mart Stores, Inc.
Before: FOIL and PETTIGREW, JJ., and KLINE,[1] J. Pro Tem.
PETTIGREW, Judge.
This workers' compensation action is before us on appeal from a judgment in favor of claimant, Scott Williams, and against his employer, Wal-Mart Stores, Inc. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Scott Williams was an employee of Wal-Mart Stores, Inc. in Bogalusa, Louisiana. On November 19, 1998, Mr. Williams was decorating a display on an end-cap in the automotive department of the store when his arm bumped the sidekick on the shelf causing it to come loose.[2] As the sidekick began to fall, Mr. Williams noticed a customer coming down the aisle in a wheelchair. Mr. Williams reached out to grab the sidekick and pull it away from the customer. Mr. Williams described the incident as follows:
I caught it. And after I caught it with my lower left hand first and then my right hand was on it, it slipped from my right hand. So I had to overextend to catch it again because the top was going towards the customer. And then when my hand got on it the second time, my right hand, I pulled it back toward me. And when that happened, it fell on top of me.
Charles Varnado, who was working the cash register in the automotive department at the time in question, testified about his recollection of the accident. Just prior to the accident, Mr. Varnado was helping a customer at the cash register and Mr. Williams was sitting on the floor working on the end-cap. Mr. Varnado heard a noise and looked up to see the *297 sidekick falling at the end of the aisle where Mr. Williams was working. According to Mr. Varnado, Mr. Williams reached out with his left hand to catch the sidekick to prevent it from falling to the ground and possibly striking a nearby customer.
Initially following the accident, Mr. Williams complained only about pain in his left arm. He sought treatment at Bogalusa Medical Center later that night, and his arm was placed in a splint. When he returned to work the following day, Mr. Williams was assigned to light-duty work, running the cash register in the automotive department, which he continued doing for approximately ten days.
On November 29, 1998, Mr. Williams was seen in the emergency room of Washington-St. Tammany Regional Medical Center with complaints of sudden onset of right flank pain. Mr. Williams was diagnosed with kidney stones. When his back pain worsened, Mr. Williams returned to Washington-St. Tammany Regional Medical Center with complaints of low back pain radiating into his legs. He was admitted to the hospital for treatment by a neurologist, Dr. Amartyadeb Goswami, who scheduled Mr. Williams for an emergency MRI. The test did not reveal any disc protrusions. Mr. Williams was subsequently discharged from the hospital, only to return approximately two weeks later with similar complaints of back pain. A repeat MRI was done at this time, the results of which were inconclusive. Mr. Williams was then referred to a neurosurgeon and ultimately underwent two separate surgeries on the L5-S1 disc. According to Dr. Goswami, Mr. Williams' low back injury was related to the November 19, 1998 incident.
When Mr. Williams initially reported the accident to his manager, he made no complaints of back pain. However, Mr. Williams began suffering from low back pain about a week later. He subsequently learned that his back pain was not associated with kidney stones. Thus, on December 30, 1998, Mr. Williams completed a form entitled "ASSOCIATE STATEMENTWORKERS COMPENSATION" in which he indicated he had injured both his left wrist and his low back in the incident on November 19, 1998.
On March 23, 1999, Mr. Williams filed a Disputed Claim For Compensation alleging a work-related injury to his wrist and back. Wal-Mart answered Mr. Williams' claim denying that Mr. Williams had suffered any injuries related to the incident on November 19, 1998. Based on the circumstances present, Wal-Mart denied Mr. Williams weekly indemnity benefits and medical benefits. This matter proceeded to trial before the workers' compensation judge on February 17, 2000. Prior to submitting evidence, the parties stipulated as follows: 1) Mr. Williams was working at Wal-Mart on the day in question; 2) he was earning $5.65 per hour; 3) his average weekly wage was $214.70; and 4) the applicable workers' compensation rate would be $143.13.
At the conclusion of trial, the workers' compensation judge asked the attorneys to submit post-trial memorandums and took the matter under advisement. Thereafter, on March 24, 2000, the judge rendered judgment in favor of Mr. Williams, awarding him temporary total disability benefits at the weekly rate of $143.13 from November 18, 1998, through the duration of his disability. It is from this judgment that Wal-Mart has appealed, assigning error to the workers' compensation judge's finding that Mr. Williams was entitled to benefits. Wal-Mart argues on appeal that Mr. Williams failed to carry the requisite burden of proof regarding the medical connection between the work-related accident and his lower back condition.

*298 DISCUSSION
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-83 (La.1993).
In order for a claimant to be entitled to recover workers' compensation benefits, he must prove, by a preponderance of the evidence, that a work-related accident occurred and that an injury was sustained. A claimant's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Jackson v. Savant Insurance Company, 96-1424, p. 3 (La.App. 1 Cir. 5/9/97), 694 So.2d 1178, 1180. See also Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992).
In workers' compensation cases, a disability is presumed to be the result of the work-related accident if the claimant was in good health before the accident, and the symptoms of the disability appear after the accident and continue to manifest themselves. This presumption is available when sufficient medical evidence is introduced to show a reasonable possibility of a causal connection between the disability and the work-related accident, or that the nature of the accident raises a natural inference that such a causal connection exists. LeBlanc v. Cajun Painting Inc., 94-1609, p. 10 (La.App. 1 Cir. 4/7/95), 654 So.2d 800, 807, writs denied, 95-1706, 95-1655 (La.10/27/95), 661 So.2d 1349, 1350. Thus, when there is proof of an accident and a following disability, without an intervening cause, it is presumed that the accident caused the disability. Jackson, 96-1424 at 3, 694 So.2d at 1180. Moreover, the fact that a claimant does not realize or diagnose the full extent of his injury immediately after an accident should not bar him from recovery. Middleton v. International Maintenance, 95-0238, pp. 6-7 (La. App. 1 Cir. 10/6/95), 671 So.2d 420, 424, writ denied, 95-2682 (La.1/12/96), 667 So.2d 523.
Thus, in determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony is accorded great weight. Bruno, 593 So.2d at 361. The determinations by a workers' compensation judge as to whether the claimant's testimony is credible and whether the claimant has discharged his burden of proof are factual determinations and will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Id.
The manifest error test requires the reviewing court to consider the record as a whole to ascertain whether the trier of fact's findings constituted manifest error. Since the trier of fact's findings are accorded great weight on appeal, the Louisiana *299 Supreme Court has set forth a two-part test for use by appellate courts in applying the manifest error standard of review. First, the appellate court must conclude from the record that a reasonable factual basis does not exist for the trier of fact's findings. Second, the appellate court must determine that the findings were clearly wrong based on the record. Stobart, 617 So.2d at 882.
In written reasons for judgment rendered on March 9, 2000, the workers' compensation judge noted as follows:
It is with out [sic] question an unusual set of facts and circumstances surrounding this claim. There exists complicated medical factors and Williams must prove a causal conexity [sic] between the spinal injury and the accident at Walmart [sic] dated November 19, 1998. Said proof must be by a preponderance of evidence.
Williams met his burden of proof by showing he was in good health prior to the accident and that symptoms of a disabling condition commenced thereafter and that medical evidence shows a reasonable connection between the accident and the disability. Even though there exists conflicting medical expert testimony, Williams' treating physicians is [sic] given much weight. The history provided to the medical care provide[r] is consistent with the testimony in this case. Dr. Goswami's expert medical testimony as the treating neurologist is corroborated by other medical evidence as well as the testimony of Williams himself. There was no intervening injury and Williams was a credible witness.
Accordingly Williams is found to be temporarily totally disabled from December 22, 1998, the date Dr. Goswami first admitted Williams with a diagnosis of lumbar radiculopathy at L5-S1. Due to the conflicting and complicated medical evidence, it is found that Walmart [sic] reasonably controverted the lumbar claim, and thus there is no basis for an award of attorney's [sic] fees or penalty.
As previously indicated, the determinations by the workers' compensation judge as to whether Mr. Williams' testimony is credible and whether Mr. Williams has discharged his burden of proof are factual determinations that will not be disturbed on review in the absence of manifest error. In this case, the workers' compensation judge found Mr. Williams to be a credible witness and concluded that the medical evidence showed a reasonable connection between the work-related accident and Mr. Williams' back injury. The judge also noted that while there was conflicting medical expert testimony, the testimony of Mr. Williams' treating physician should be given much weight. See Ross v. Remediation Services of Louisiana, 97-2102, p. 8 (La. App. 1 Cir. 5/15/98), 714 So.2d 218, 223. Based on a complete review of the record, we cannot say that the judge was clearly wrong in finding that Mr. Williams proved, by a preponderance of the evidence, that he injured his back in the November 19, 1998 accident at Wal-Mart.

CONCLUSION
For the above and foregoing reasons, the judgment of the workers' compensation judge is affirmed in all respects. Costs associated with this appeal are assessed against defendant-appellant, Wal-Mart Stores, Inc.
AFFIRMED.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Mr. Williams described a sidekick as a hanging metal basket used to display merchandise on an end-cap.