J^MCCLENDON, J.
In this workers’ compensation case, the issue on appeal is whether the employee sustained an accident in the course and scope of her employment. For the following reasons, we affirm the judgment of the Office of Workers’ Compensation awarding benefits to the employee.
FACTS AND PROCEDURAL HISTORY
Karen T. Lee was employed in Baton Rouge by the Blood Center of Southeast Louisiana, Inc. (Blood Center). On October 19, 1999, Ms. Lee participated in a blood drive with four other Blood Center employees at Direct Corporation in Baton Rouge. At the conclusion of the blood drive, Ms. Lee alleged that while loading equipment onto an elevator, the elevator closed on her knee causing injury.
Ms. Lee filed a disputed claim for compensation and, after hearing the matter, the workers’ compensation judge determined that Ms. Lee sustained an injury while in the course and scope of her employment with the Blood Center. Judgment was rendered in Ms. Lee’s favor awarding her workers’ compensation and medical benefits. The Blood Center and Louisiana Workers’ Compensation Corporation appeal, asserting that the workers’ compensation judge erred in finding that Ms. Lee suffered an accident and injury in the course and scope of her employment.
DISCUSSION
In order to recover workers’ compensation benefits, a claimant must establish “personal injury by accident arising out of and in the course of his employment.” LSA-R.S. 23:1031(A). Thus, a claimant must prove, by a preponderance of the evidence, that a work-related accident occurred and that an injury was sustained. A claimant’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no pother evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Thomas v. Wal-Mart, 02-1356, p. 8 (La.App. 1 Cir. 5/9/03), 849 So.2d 592, 598; Jackson v. Savant Ins. Co., 96-1424, p. 3 (La.App. 1 Cir. 5/9/97), 694 So.2d 1178, 1180. See also Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992).
Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the workers’ compensation judge. Williams v. Wal-Mart Stores, Inc., 00-1347, p. 5 (La.App. 1 Cir. 9/28/01), 809 So.2d 294, 298. Factual findings in a workers’ compensation case are subject to the manifest error standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556.
In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, 617 So.2d 880, 882 (La.1993). If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have *611 weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). Where there are two permissible views of the evidence, a fact finder’s choice between them can never be manifestly erroneous or clearly wrong. Id.
In this matter, defendants argue that the workers’ compensation judge erred in determining that Ms. Lee suffered a work-related accident when there was only her testimony to the occurrence of the accident, her version [4was discredited by the testimony of the other witnesses, and the circumstances following the incident failed to corroborate her version.
Ms. Lee testified that on the day in question, she drove her car to the location of the blood drive because she lived near the site and her supervisor had given her permission to do so. Ms. Lee stated that after the blood drive was over, the equipment was packed up, put in the hallway, and the employees were taking turns bringing it down the elevator to the Blood Center van. Ms. Lee stated that when she was loading the equipment into the elevator, the elevator door suddenly closed jamming her right knee. Ms. Lee testified that she had to pry the door open from the inside, while an unidentified man outside the elevator also helped. Ms. Lee said she then went to the bathroom, which was on the same floor as the blood drive, to check her knee and regain her composure. She stated that when she came out of the bathroom, the equipment and the employees were gone. She asked someone where her supervisor was and was told everyone had left. Ms. Lee stated she then left to return to the Blood Center office. She further testified that she stopped to use a pay phone to call the mobile telephone in the Blood Center van but that there was no answer. Ms. Lee went to the Blood Center office and reported the accident. She saw a doctor the following day. Upon the recommendation of her initial doctor, Ms. Lee followed up with her orthopedist, who recommended surgery on her knee.
Ms. Lee was questioned, on cross-examination, about an incident that happened a few days earlier, on October 13, 1999, that resulted in her being reprimanded for starting an argument. She testified that she did not remember being told that she could be terminated. She further stated that when she returned to the Blood Center after the blood drive on October 19, 1999, she was informed that she had been terminated.
| ¡¿Patricia Martin, Ms. Lee’s Immediate supervisor in October 1999, testified at trial that Ms. Lee did not show up on time at the Blood Center office the morning of the incident, so she and the other two Baton Rouge employees left in the van to go to the blood drive location. While they were en route, Ms. Lee called and was told to meet them at the site.
Ms. Martin testified that to her knowledge, Ms. Lee did not help in packing up after the blood drive. Ms. Martin did state, however, that she was doing paperwork while the equipment was being packed up. Ms. Lee was supposed to tell Ms. Martin when she left. Ms. Martin did not see Ms. Lee leave. She asked one Blood Center employee if she had seen Ms. Lee, and was told no. When Ms. Martin asked James Woods, an employee of the Blood Center, about Ms. Lee’s whereabouts, he told her that when he was moving his vehicle closer to the rear of the building to pack up the blood drive equipment, he saw Ms. Lee leave in her car. Ms. Martin testified that Ms. Lee never reported any injury to her. She also stated that when she went downstairs to look for Ms. Lee, Ms. Lee’s car was not in the parking lot.
*612 Mr. Woods testified that he knew Ms. Lee from prior blood drives and that she did not help with the packing of the equipment to put it in the van or with the loading of the van. He stated that when he was moving his vehicle closer to the building after the drive, he saw Ms. Lee get in her car and leave. As she was getting in her car, Mr. Woods testified, she waved at him and he waved back. She then drove off.
Ramona Marchand, the human resource manager at Direct Corporation and coordinator of the blood drives, testified that when she walked out of her office to say goodbye to the blood drive employees, Ms. Lee was gone. However, Ms. Marchand also stated that when the employees were packing up to bring the equipment downstairs, the employees asked her | fiassistant to tell Ms. Lee that they were downstairs and that Ms. Lee appeared about five minutes later.
In her reasons for judgment, the workers’ compensation judge initially stated that she weighed the employee and employer testimony to be about equal and that she was looking for some independent testimony to tip the scale one way or the other. She also considered the possibility that Ms. Lee may have fabricated her story knowing that she was going to be terminated. The workers’ compensation judge then stated that it was not until she heard the testimony of Ms. Marchand, that Ms. Lee came back not long after the Blood Center employees left, that she found support for Ms. Lee’s version that she was in the bathroom upstairs. The workers’ compensation judge further found that the testimony of Ms. Marchand, an independent witness, corroborated the timing of Ms. Lee’s version of events. She also stated that the only 'other plausible possibility was that Ms. Lee left the premises and returned, but that the evidence did not support this scenario. The workers’ compensation judge further noted Mr. Woods’ testimony that he saw Ms. Lee leave, stating that while he was clear about that, he was unclear about everything else, and may have been mistaken.
Herein, there were two permissible views of the evidence and the workers’ compensation judge made the factual determination that Ms. Lee was in the bathroom when her co-employees left. We cannot say that this determination was not reasonable in light of the entire record. Therefore, the determination of the workers’ compensation judge that Ms. Lee suffered an accident in the elevator in the course and scope of her employment, is not manifestly erroneous.
^CONCLUSION
For the above reasons, the February 6, 2003 judgment of the Office of Workers’ Compensation is affirmed. Costs on appeal are assessed to the Blood Center of Southeast Louisiana, Inc. and Louisiana Workers’ Compensation Corporation.
AFFIRMED.