879 So.2d 222 (2004)
Emmalene K. HEBERT
v.
TERREBONNE PARISH SCHOOL BOARD.
No. 2003 CA 1444.
Court of Appeal of Louisiana, First Circuit.
May 14, 2004.
*224 J. Rene Williams, Houma, Counsel for Plaintiff/Appellant Emmalene K. Hebert.
Bernard F. Levy, Houma, Counsel for Defendant/Appellee Terrebonne Parish School Board.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
GUIDRY, J.
In this workers' compensation action, plaintiff, Emmalene Hebert, appeals the judgment of the Office of Workers' Compensation (OWC) dismissing her claim for compensation with prejudice. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
In May 1993, Ms. Hebert was injured while employed by the defendant, Terrebonne Parish School Board (School Board), as a teacher's aide. Thereafter, the School Board voluntarily paid compensation benefits in the amount of $116.11 per week. Beginning in 1995, Ms. Hebert also started to receive disability retirement benefits from the Teachers' Retirement System. However, in March 2001,[1] the School Board stopped paying workers' compensation benefits based on an alleged overpayment that had occurred.
On February 20, 2002, Ms. Hebert filed a disputed claim form with the OWC, requesting compensation benefits to which she was entitled from the date the School Board stopped making payments. In its answer, the School Board stated that Ms. Hebert's actual compensation rate was $112.27 per week. The School Board also claimed that, because Ms. Hebert was receiving disability retirement benefits from the Teacher's Retirement System and the School Board contributed to the retirement system, it is entitled to a credit for a portion of such payments against its workers' compensation liability. Finally, the School Board contended, in response to Ms. Hebert's claims, that she has been compensated for the period during which she was permanently disabled and that she is capable of engaging in employment earning ninety percent or more of her average weekly wage at the time of her injury.
*225 Following a hearing, the workers' compensation judge signed a judgment on April 24, 2003, finding that Ms. Hebert: (1) failed to prove by clear and convincing evidence that she is unable to engage in employment of any kind; (2) failed to prove by clear and convincing evidence that she is totally and permanently disabled; (3) failed to prove by clear and convincing evidence that she is unable to earn ninety percent of her pre-injury wages; and (4) is not entitled to supplemental earnings benefits (SEB). Additionally, the workers' compensation judge found: (1) Ms. Hebert was overpaid compensation benefits by the School Board and therefore, the School Board is entitled to recover the overpayment in the total amount of $1,516.80 from Ms. Hebert's future benefits; and (2) the School Board is entitled to an offset against compensation liability in the amount of $9,988.52, which is 61.72% of Ms. Hebert's paid retirement benefits. Accordingly, the workers' compensation judge dismissed Ms. Hebert's compensation claim with prejudice.

ASSIGNMENTS OF ERROR
Ms. Hebert now appeals from this judgment and asserts the following assignments of error:
1. The workers' compensation judge erred in concluding that the School Board was entitled to a credit for alleged overpayments previously made because of the School Board's failure to properly calculate the amount of her benefits or to properly calculate an offset against her disability retirement benefits, to which it may be been entitled.
2. The workers' compensation judge erred in concluding that Ms. Hebert failed to prove by clear and convincing evidence that she is unable to engage in employment of any kind.
3. The workers' compensation judge erred in concluding that Ms. Hebert failed to prove by clear and convincing evidence that she is totally and permanently disabled.
4. The workers' compensation judge erred in concluding that Ms. Hebert failed to prove by clear and convincing evidence that she is unable to earn ninety percent of her pre-injury wages.
5. The workers' compensation judge erred in concluding that Ms. Hebert is not entitled to SEB.

DISCUSSION

Standard of Review
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Banks, 96-2840 at pp. 7-8, 696 So.2d at 556. As such, even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Williams v. Wal-Mart Stores, Inc., 00-1347, p. 4 (La.App. 1st Cir.9/28/01), 809 So.2d 294, 298. Further, where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Williams, 00-1347 at p. 4, 809 So.2d at 298.

*226 Credit for Overpayment of Compensation Benefits

Louisiana Revised Statutes 23:1206 provides as follows:
Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee or dependent, and accepted by the employee, that were not due and payable when made, may be deducted from the payments to be made as compensation.
This statute entitles an employer to a credit for previous overpayments from future compensation, which may be due. Fontenot v. Trans Gulf, Inc., 95-0342, pp. 18-19 (La.App. 1st Cir.11/9/95), 664 So.2d 1238, 1250. Further, this statute applies even if the overpayment is due to the employer's error in calculating benefits. Ferrand v. D.H.L. Co., 614 So.2d 350, 354 (La.App. 4th Cir.1993)
In the instant case, the School Board voluntarily made compensation payments to Ms. Hebert. However, due to a miscalculation by the School Board, Ms. Hebert was paid an additional $3.84 per week for approximately seven years. As such, the workers' compensation judge determined that Ms. Hebert was paid compensation in the amount of $1,516.80, which was not due and payable when made. In accordance with La. R.S. 23:1206, the School Board was entitled to a credit for its overpayment of benefits. Additionally, it has been held that discontinuation of benefits until the overpayment is recouped is permissible and proper under La. R.S. 23:1206. See Breaux v. Petro Drive, Inc., 534 So.2d 48, 49 (La.App. 3rd Cir.1988); Ferrand, 614 So.2d at 354. Therefore, we find no error in the judgment of the workers' compensation judge, finding that the School Board is entitled to recover its overpayment from Ms. Hebert's future benefits.

Offset or Credit for Disability Retirement
As stated previously, Ms. Hebert not only received compensation payments from the School Board, but beginning in 1995, she also started to receive disability retirement benefits from the Teachers' Retirement System. According to the applicable version of La. R.S. 23:1225(C)(1):
If an employee receives remuneration from:
(a) Benefits under the Louisiana Worker's Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from Subparagraphs (a) through (d) of this subsection shall not exceed sixty-six and two-thirds percent of his average weekly wage.
Thus, when an employee receives, in addition to workers' compensation benefits, benefits under another (non-workers' compensation) disability plan funded by the employer, the employer is entitled to an offset or credit for benefits received by the employee from the separate disability plan in the proportion to which those benefits are funded by the employer. Holden v. International Paper Company, 31,104, p. 4 (La.App. 2nd Cir.10/28/98), 720 So.2d 442, 445, writ denied, 98-2956 (La.1/29/99), 736 So.2d 834; Rochon v. Iberia Parish School *227 Board, 95-1370, p. 12 (La.App. 3rd Cir.3/27/96), 673 So.2d 239, 246.
Ms. Hebert argues on appeal that the School Board was responsible for properly coordinating her benefits and cannot now claim, to her detriment, a credit for its alleged overpayment. In support of her argument, Ms. Hebert relies on Daigle v. Employers National Insurance Company, 94-126 (La.App. 3rd Cir.12/1/99), 747 So.2d 696. In Daigle, an employer failed to properly coordinate the termination of its offset with the activation of the Social Security Administration's offset. As such, for a period of time, the claimant suffered a double offset of benefits. Daigle, 94-126 at pp. 4-5, 747 So.2d at 699. The court relied on the principle that a disabled employee not be "forced to endure a period of time when he is not receiving his due portion of benefits simply because the Social Security Administration and the employer or its insurer failed to properly coordinate the termination and activation of their respective offsets." Daigle, 94-126 at p. 4, 747 So.2d at 699.
In the instant case, after the School Board stopped making compensation payments, Ms. Hebert notified the Teachers' Retirement System, which promptly adjusted her disability benefit from the time the School Board stopped making payments in February 2001. Therefore, Ms. Hebert, unlike the claimant in Daigle, was never subject to a double offset. Rather, Ms. Hebert's disability retirement benefits were increased and the School Board sought to recoup a credit to which it was entitled under La. R.S. 23:1225(C)(1)(c).
Further, Ms. Hebert argues that there was no evidence submitted at the hearing that the School Board was entitled to a credit. However, at trial, the School Board submitted records from the Teachers' Retirement System, showing the amount, percentage, and duration of its contributions. Therefore, based on the law and our thorough review of the record, we cannot find that the workers' compensation judge erred in finding that the School Board was entitled to an offset or credit against its compensation liability.

Permanent and Total Disability
In her disputed claim form, Ms. Hebert asserted that she remains permanently and totally disabled. In its answer, however, the School Board asserted for the first time that Ms. Hebert was no longer permanently and totally disabled and was no longer entitled to SEB. In reviewing the workers' compensation judge's decision in this regard, we first address the issue of permanent total disability.
According to the applicable version of La. R.S. 23:1221(2)(c), "whenever the employee is not engaged in any employment or self-employment ... compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment."
At trial, Ms. Hebert presented several letters from her physician, Dr. Stefan Pribil, in support of her contention that she remains permanently and totally disabled. These letters, dated December 12, 2002 and March 7, 2003, dispute the findings of the functional capacity evaluation (FCE) performed at the request of the School Board and provide that as far as Dr. Pribil is concerned, Ms. Hebert is permanently and totally disabled.
Additionally, Ms. Hebert submitted a vocational survey performed by Heyward Johnson. In this survey, Mr. Johnson indicated that he thought Ms. Hebert was not a good candidate to return to work based on Ms. Hebert's multiple complaints. *228 He also stated repeatedly that based on the minimal information that he had, there was no way for him to determine Ms. Hebert's ability to return to work. However, in concluding his report, he opined at that time, based on the information he had, Ms. Hebert was "still disabled to return to work."
The School Board introduced Ms. Hebert's medical records from Dr. Pribil, testimony and a report from Dr. Christopher Cenac, an orthopedic surgeon who performed the independent medical examination (IME), and a FCE report from Deoma J. Adams, a physical therapist. The testimony and report from Dr. Cenac reveal that he evaluated Ms. Hebert on February 12, 2003, approximately one month prior to the hearing, at which time he reviewed Ms. Hebert's prior medical records and performed an examination. Dr. Cenac agreed with Dr. Pribil that Ms. Hebert had reached maximum medical improvement and further indicated that any treatment at this point would be symptomatic and non-work related because of Ms. Hebert's age, weight, and degenerative pathology. Although he deferred to the FCE for a more definitive determination regarding Ms. Hebert's ability to engage in employment, Dr. Cenac stated that even without the FCE findings, he felt that Ms. Hebert was capable of occasional light and sedentary work and that she was able to do such work with intermittent periods of rest over an eight-hour day. The FCE performed the day after Dr. Cenac's evaluation determined that Ms. Hebert was able to work at a sedentary physical demand level for an eight-hour day, with occasional sitting and standing.
A review of Ms. Hebert's medical records indicates that during her treatment, which ended in May of 2000, her then treating physicians determined that she was permanently and totally disabled at that time. However, Ms. Hebert did not present any evidence that she was reevaluated by any of these physicians or that based on her current medical condition, she remains permanently and totally disabled. Ms. Hebert did submit several letters from Dr. Pribil indicating that she was permanently and totally disabled. Dr. Pribil, however, had not seen or treated Ms. Hebert since May of 2000, and he did not articulate any basis in these letters for his determination.
Although Ms. Hebert argues on appeal that her treating physicians indicated that she would never be able to return to work, from our review of the record, we find that the majority of the time, these opinions were qualified by "at this time" or refer to Ms. Hebert being disabled "from what she was doing." In 1996, Dr. Donald Judice, her surgeon and then treating physician, did articulate that Ms. Hebert would be disabled for the foreseeable future, but based on the length of time since this opinion, the fact that Ms. Hebert had not been re-evaluated by any of her physicians since May 2000, and the reports of Dr. Cenac and Mr. Adams, we do not find that the workers' compensation judge erred in determining that Ms. Hebert failed to prove by clear and convincing evidence that she is permanently and totally disabled.

Supplemental Earnings Benefits
An employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn ninety-percent or more of his average pre-injury wages. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks, 96-2840 at p. 8, 696 So.2d at 556. This analysis is necessarily a facts and circumstances one in which the court is to *229 be mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. Banks, 96-2840 at pp. 8-9, 696 So.2d at 556.
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEB or to establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. Banks, 96-2840 at p. 9, 696 So.2d at 556. The employer may discharge its burden of proving job availability by establishing, at a minimum, the following:
(1) the existence of a suitable job within the claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
Further, "suitable job" has been defined not only as one the claimant can physically perform, but also one which falls within the limits of claimant's age, experience, and education. Banks, 96-2840 at pp. 10-11, 696 So.2d at 557.
Finally, if the employer is successful in sustaining its burden, the burden shifts back to the claimant to show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered solely as a consequence of substantial pain. La. R.S. 23:1221(3)(c)(ii).
From our review of the OWC's judgment, it is apparent that the workers' compensation judge applied an incorrect and heightened burden of proof to Ms. Hebert's claim for SEB. Therefore, our review of this issue will be de novo. See Oubre v. Jacobs Engineering Group, 98-1129, pp. 2-3, (La.App. 1st Cir.5/14/99), 739 So.2d 235, 237, writs denied, 99-1515 (La.9/17/99), 747 So.2d 1108, and 99-2317 (La.9/17/99), 747 So.2d 569.
In the instant case, Ms. Hebert relied on letters from Dr. Pribil, her medical history dating back to the onset of her injury, and Mr. Johnson's vocational survey to establish that she is unable to earn ninety percent of her pre-injury wage. The contents of Ms. Hebert's medical history, Mr. Johnson's vocational survey, and several letters from Dr. Pribil have been previously outlined. However, the December 12, 2002 letter from Dr. Pribil additionally indicated that he was revoking his prior approval of several sedentary positions located by Carla Seyler, the vocational counselor consulted by the School Board. Dr. Pribil offered no explanation for his conclusion and made this statement without the benefit of a reevaluation of Ms. Hebert.
In light of this evidence, and our findings as previously outlined, this court is unable to determine that Ms. Hebert established a prima facie case that she is unable to earn ninety percent of her pre-injury wage. However, assuming for the sake of argument that Ms. Hebert met her burden, the record is replete with evidence from the School Board, which we find preponderates in its favor.
As stated previously, Dr. Cenac and the FCE report prepared by Mr. Adams suggest that Ms. Hebert is not permanently and totally disabled and is capable of performing sedentary or light duty work over the course of an eight hour day. This is the only medical evidence evaluating Ms. Hebert's current medical condition and capabilities since May of 2000 when she was last seen by Dr. Pribil.
*230 Additionally, the School Board presented the vocational reports from Ms. Seyler. These reports state that Ms. Hebert obtained her GED diploma and that she tested at the college level. Based on the results of her evaluation, Ms. Seyler performed a labor market survey, finding Ms. Hebert was employable in positions earning $5.15/hour to approximately $1,200/month, and located several jobs within Ms. Hebert's restrictions, capabilities, and geographic region. Ms. Seyler forwarded information regarding these positions to both Ms. Hebert and Dr. Pribil. On August 29, 2002, Dr. Pribil approved several of the positions. Thereafter, Ms. Seyler contacted Ms. Hebert to inform her of Dr. Pribil's decision and to give her the names of the specific employers so she could apply for the positions. However, Ms. Seyler indicated that she never heard back from Ms. Hebert and that when she followed up with the employers, Ms. Seyler was either unable to verify that Ms. Hebert applied or was definitively told that Ms. Hebert in fact never applied for the position. Ms. Seyler continued to offer her services; however, she did not believe Ms. Hebert was interested in employment because she lacked a desire to work.
Therefore, based on the evidence as outlined above and our thorough review of the record, we find that Ms. Hebert failed to prove that she is entitled to SEB.

CONCLUSION
For the foregoing reasons, the judgment of the OWC is affirmed. All costs of this appeal are to be borne by the appellant, Emmalene Hebert.
AFFIRMED.
PARRO, J., concurs.
NOTES
[1] According to the record, Ms. Hebert was receiving workers' compensation disability payments at the end of every month. As such, Ms. Hebert's last payment was for February, which she received February 28, 2001.